493 So.2d 342 (1986)
Brenda Dianne BIAS
v.
Jesse J. BIAS, Jr.
No. 56959.
Supreme Court of Mississippi.
August 6, 1986.
Rehearing Denied September 17, 1986.
Cotton Ruthven, Waller & Waller, Jackson, for appellant.
B. Stirling Tighe, Tighe & Tighe, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
*343 ROBERTSON, Justice, for the Court:
This appeal presents the question whether  and on what conditions  a party to a marriage may maintain an action for divorce on grounds of habitual cruel and inhuman treatment after having unsuccessfully sought on a previous date a divorce on the same grounds. The question arises in a combined factual and procedural context not heretofore considered by the Court.
On December 3, 1985, the Chancery Court of Hinds County, Mississippi, summarily dismissed the complaint for divorce of today's Appellant, Brenda Dianne Bias. That complaint had been filed on July 26, 1985, and had charged the Defendant, Jesse J. Bias, Jr., Appellee here,
with habitual cruel and inhuman treatment and with an irreconcilable differences as her grounds for divorce within the meaning of the statute controlling the same. The provisions of Section 93-5-1, et seq. of the Mississippi Code (1972) are invoked as to these charges of grounds for a divorce.
The complaint further alleged that the parties had been married since November 7, 1972, and had permanently separated some twenty-two months earlier in September of 1983. The matter was adjudged in the Chancery Court upon Jesse Bias' motion to dismiss, the ground rules for the consideration of which emanate from Rules 8(a) and (e) and 12(b)(6), Miss.R.Civ.P.[1]See Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 504-06 (Miss. 1985).
This was not the first time Brenda had sought a divorce from Jesse on habitual cruel and inhuman treatment grounds. Brenda's first such complaint had been filed October 12, 1983, again in the Chancery Court of Hinds County. She had there alleged an October 5, 1983, permanent separation. Trial resulted in a final adjudication on June 14, 1984, dismissing Brenda's demand for divorce but settling child custody and support matters. The first proceeding formed the predicate for Jesse's argument that the present case should be dismissed summarily.
On October 30, 1985, the chancellor announced his decision dismissing the complaint. He reasoned that no offending conduct constituting the grounds for divorce could have caused the separation of the parties, the separation having occurred in September of 1983 and the previous divorce proceeding having been finally dismissed on June 14, 1984. The pleadings suggest that the parties did not live together for any part of the thirteen and a half month period between dismissal of the first complaint and the filing of the second.
From these premises, Jesse suggested and the chancellor accepted that the habitual cruel and inhuman treatment of Brenda by Jesse following June 14, 1984, could not have been the proximate cause of the (September 1983) separation. The chancellor further dismissed the complaint on grounds that the final adjudication in the first action was res judicata and that Brenda was collaterally estopped from relitigating the issue of habitual cruel and inhuman treatment.
The procedural posture of this case is vitally important to a correct understanding of today's decision. The chancellor proceeded without an evidentiary hearing and without presentation by the parties of any other form of evidence. What, and all, the chancellor had before him was Brenda's complaint, Jesse's motion to dismiss and, of course, judicial knowledge of the prior proceedings.[2] In such a context a *344 trial judge may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 504-06 (Miss. 1985).
In this context we consider that Brenda charges Jesse "with habitual cruel and inhuman treatment". She invokes the provisions of Section 93-5-1, et seq., as authority for non-statement of the details of her charge. Thereafter, Brenda charges that Jesse
has continually harassed, abused and mistreated the Plaintiff both before and after the formal litigation, so much that the Plaintiff's health has been severely impaired.
We concentrate first upon the June 14, 1984  July 26, 1985, period  from the dismissal of the first action and the filing of Brenda's second complaint. Having in mind the standards we employ in considering motions to dismiss, we do not consider it clear beyond reasonable doubt that, within that thirteen and a half month period of time, Jesse could have committed no acts which could in the aggregate constitute cruel and inhuman treatment.[3]
It is true that the parties were not cohabiting during that thirteen and a half month period of time. Jesse seizes upon this fact to argue, in effect, that habitual cruel and inhuman treatment may only occur when the parties to a marriage are living together. There is simply no reason on principle why this should always be so. Concededly, where the parties have not lived together during such a time internal, common sense suggests the cases will be infrequent where one party is able to prove that the other has been guilty of cruel and inhuman treatment of the other, habitual or otherwise. We have reiterated many times recently that habitual cruel and inhuman treatment, like any other ground for divorce, must be proved. Haralson v. Haralson, 483 So.2d 378, 379-80 (Miss. 1986); Fournet v. Fournet, 481 So.2d 326, 328-29 (Miss. 1985); Stennis v. Stennis, 464 So.2d 1161, 1162 (Miss. 1985); Gallaspy v. Gallaspy, 459 So.2d 283, 285 (Miss. 1984). That a phenomenon is not likely often to occur establishes not that it may never occur. See Slaughter v. Slaughter, 190 Ga. 229, 9 S.E.2d 70, 72 (1940).
There is a further dimension of viability of the complaint. The acts, if any, of cruel and inhuman treatment occurring in the thirteen and a half months prior to July 26, 1985, may in proof be coupled with Jesse's pre-June 14, 1984 acts, again, if any, so that all may be viewed in the aggregate. The point has been articulated in Bunkley & Morse's Amis On Divorce and Separation in Mississippi, § 16.06, at pp. 313-14 (1957):
If the suit for divorce be for the misconduct of the defendant after the marriage, a slightly different rule obtains in case of a dismissal of the bill of complaints on the merits. Such a decree is conclusive that the facts then existing did not warrant a divorce. It does not prohibit the filing of a later suit alleging the same facts as in the first suit plus such additional facts connected therewith subsequently occurring, all of which taken together would be sufficient to warrant a divorce. Thus, where the cause for divorce charged in the first suit was a continuing one such as habitual cruel and inhuman treatment, the proof might *345 show a persistent continuous course of cruel conduct on the part of the defendant... .
In other words, elementary notions of res judicata and collateral estoppel preclude Brenda from relitigating the question of habitual cruel and inhuman treatment with respect to acts of Jesse J. Bias said to have occurred prior to June 14, 1984. On the other hand, she is not precluded from litigating the question of whether Jesse's pre-June 14, 1984, actions, if any, aggregated with post-June 24, 1984, actions, if any, constitute habitual cruel and inhuman treatment. Miss. Code Ann. § 93-5-1 [Seventh] (1972). Cf. Moore v. United States, 246 F. Supp. 19, 21-22 (N.D. Miss. 1965).
There is a final question presented: whether, in view of our recognition that in fact, and, therefore, in law, a charge of habitual cruel and inhuman treatment may be predicated upon conduct of the offending spouse occurring after the separation. See Slaughter v. Slaughter, 190 Ga. 229, 9 S.E.2d 70, 72 (1940). This question arises against the backdrop of our frequent statements to the effect that the cause for the divorce must in fact have been the proximate cause of the separation of the parties. We have recognized this causal connection rule in the context of divorces sought on grounds of habitual cruel and inhuman treatment. See e.g., Fournet v. Fournet, 481 So.2d 326, 329 (Miss. 1985); Harrison v. Harrison, 285 So.2d 752, 754 (Miss. 1973); Burnett v. Burnett, 271 So.2d 90, 93 (Miss. 1972); Brownell v. Brownell, 209 So.2d 187, 188 (Miss. 1968); and Hinton v. Hinton, 254 Miss. 50, 179 So.2d 846, 848 (1965). We have not heretofore considered the point in today's context.
The question requires a dual answer. In the first place, logical incongruity would not attend the suggestion that Brenda separated from Jesse as a result of cruel acts in September of 1983 (but acts not sufficiently habitual or cruel to constitute grounds for divorce) and that Jesse's conduct after the first adjudication when aggregated with that before is sufficient to ground a divorce in the new action.
Second, recognition of the premise that the conduct of one separated from his or her spouse may constitute habitual cruel and inhuman treatment necessitates candid acknowledgment that our traditional proximate cause rule should be limited. Absence of proof of proximate cause does not in logic negate the reality of habitual cruel and inhuman treatment, which may indeed have been a proximate cause of harm to the health and physical well being of the plaintiff (as distinguished from the actual cause of the separation). The chancellor's primary inquiry must in justice be into the ground for divorce. That inquiry requires a dual focus: upon the conduct of the offending spouse and the impact of that conduct upon the plaintiff. If the requisite impact upon plaintiff is proved, there is little reason why we should arbitrarily dismiss because of the proximate cause of separation rule which no legislature has mandated. As the ground can be established after separation, our continued enforcement of the proximate cause rule in such cases would in effect cause denial of divorces where proof has been made of grounds authorized by the legislature.
The judgment of the Chancery Court is reversed and the matter is restored to the active docket of that court as though Jesse's motion to dismiss had been overruled but wholly without prejudice to such further proceedings as may be appropriate and consistent with the views expressed in this opinion. See, e.g., McCain v. Northwestern National Insurance Co., 484 So.2d 1001, 1002 (Miss. 1986).
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The Mississippi Rules of Civil Procedure apply in divorce actions only to the extent that express statutory provisions are not to the contrary. Rule 81(a)(9), Miss.R.Civ.P. We find, however, that the quasi-notice pleading concept embodied in the Civil Rules has in divorce cases been authorized by statute, Miss. Code Ann. § 93-5-7(5) (Supp. 1985), wherein a plaintiff's complaint is sufficient thought it "allege only the statutory language". Brenda Dianne Bias has in her complaint alleged the statutory language of Section 93-5-1 [Seventh]. The ground rules for considering Jesse's motion to dismiss are the same as in other civil cases.
[2] The consideration of matters beyond the pleadings ordinarily converts a motion to dismiss into a motion for summary judgment, Rule 56, Miss.R.Civ.P. The two motions are interchangeable and readily convertible procedural vehicles. See, e.g., Kountouris v. Varvaris, 476 So.2d 599, 602 n. 3 (Miss. 1985); Hudson v. Rausa, 462 So.2d 689, 691 n. 2 (Miss. 1984). Nothing today turns on the point, for Brenda sought to offer no additional materials as allowed by Rule 56(e), Miss.R.Civ.P., and in any event today's judgment is in her favor.
[3] Via the office of a bill of particulars or normal discovery processes, Jesse could have obtained disclosure of the factual bases of Brenda's claim. See Miss. Code Ann. § 93-5-7(5) (Supp. 1985); Rules 26-37, Miss.R.Civ.P. To date Jesse has not elected to pursue these processes.