607 So.2d 1204 (1992)
Nancy FARIES
v.
Kevin FARIES.
No. 90-CA-1078.
Supreme Court of Mississippi.
September 24, 1992.
*1205 Robert J. Brantley, Jr., Brantley & Malone, Jackson, for appellant.
John W. Christopher, Ridgeland, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:

I.
Presently we are asked to determine the type of proof necessary to support grant of a divorce on the ground of habitual cruel and inhuman treatment. Nancy Faries (Nancy) appeals a decision of the Chancery Court of Madison County denying her a divorce from, and awarding custody of the children to, Kevin Faries (Kevin). Finding that the chancellor applied an erroneous standard in denying a divorce to Nancy, we reverse and remand for further proceedings consistent with this opinion. The judgment of the chancellor is in all other respects affirmed.

II.
Kevin filed his complaint for divorce first. He alleged that he was entitled to a divorce on the grounds of habitual cruel and inhuman treatment, habitual and excessive use of drugs, and irreconcilable differences. Additionally, Kevin asserted that Nancy moved from the marital residence in February of 1990 and took with her all of the furniture owned by the parties, as well as, toys and clothing of the children. He asked that the court order her to return these items because they were needed. He alleged that Nancy, due to her erratic conduct and drug abuse, was unfit to have custody of the children and requested the court to award him sole custody. He asked that the court award him exclusive use and possession of the residence and the car jointly purchased by him and Nancy.[1] Kevin sought child support and payment of his attorneys' fees. He requested a emergency hearing determining the temporary custody of the children, pending a hearing on the merits and final disposition.
Nancy answered the complaint for divorce and filed a counterclaim seeking to be divorced from Kevin. She denied the material allegations of the complaint. Although admitting that she left Kevin on February 21, 1990, Nancy explained that she had every intention of taking the children with her which is why she removed their clothing and toys. She asserted that she had returned some of the necessary clothing and toys to the marital home; further, she denied depriving Kevin and the children of furniture and furnishings needed by them, though she did remove from the abode those things which would reasonably meet her needs during the separation.
Nancy claimed that her possession of the family car was lawful, since she primarily used the vehicle.
In her counter-claim for divorce, Nancy averred that Kevin abused her physically, emotionally, and mentally, inflicted cruel *1206 and inhuman treatment upon her; she claimed also that she was entitled to a divorce on the ground of irreconcilable differences. Nancy sought separate maintenance, permanent and exclusive possession of the marital home and all of the furnishings. She asked that the court divide the other property accumulated during the marriage and order Kevin to pay any and all indebtedness against the house and the furniture. In the alternative, she requested that Kevin pay a suitable monthly sum so that she could rent a residence. Like Kevin, Nancy sought possession of the car and an order that Kevin pay any remaining indebtedness on the car. Finally, she sought a decree ordering Kevin to provide her with transportation like or similar to that with which she was accustomed, granting her custody of the children and ordering that Kevin pay child support and maintain medical insurance on her and the children.
On March 17, 1990, both parties agreed to an order of continuance specifying certain visitation schedules. Later in March, Nancy filed a "Motion for Temporary Relief" requesting that the court schedule an emergency hearing and thereafter order that she be given exclusive use and possession of the marital home and car, temporary custody of the children, child support and alimony.
The court held a hearing on April 10, 1990. In an order filed May 7, 1990, the court found that there existed no urgent or necessitous circumstances and continued the dispositions in the agreed order entered March 16, 1990, touching custody and visitation. Kevin was granted exclusive use and possession of the marital residence and custody of the children. Nancy was granted visitation. Both parties were cautioned not to remove the children from the jurisdiction.
On April 30, 1990, Kevin filed his answer to the counter-claim for divorce brought by Nancy. He denied the material allegations of the complaint and asked that the court dismiss the counter-claim for divorce.
Hearing on the complaint and counter-claim for divorce was had in August of 1990. The court denied the relief sought by the parties "because there was no corroboration as to their respective grounds as being the cause for the separation." The court found that none of the witnesses for either party testified to the cause of separation or grounds for divorce. The court assessed the cost of the proceedings equally between the parties. Judgment to this effect was entered on August 15, 1990.
Shortly thereafter, Kevin moved that the judgment be amended to address and dispose of the custody issue. He requested that the court direct the entry of a new judgment and award him custody of the children. Likewise, On August 28, 1990, Nancy moved that the court grant her custody of the children. The court acted on these motions on September 4, 1990. After hearing was held on the post-trial motions, custody was granted to Kevin. Crucial to the court's determination was the fact that Nancy took the children out of the state after the court rendered its opinion.[2] It found that Nancy's actions secreting the children from August 7, 1990, to August 30, 1990, were not in and evinced a lack of concern for the best interest of the children. Thus, the court granted custody to Kevin, finding the best interest of the children would be served if he was given custody, because he could provide them with stability and familiar surroundings. Nancy was given liberal visitation privileges.[3] *1207 Judgment to the effect of the opinion was entered September 7.[4]
Later, Kevin filed a petition to modify the final judgment because in October of 1990, Nancy moved back into the marital residence. Kevin asserted that Nancy removed from the residence certain items. He asked that the court order her to return those items she removed and pay child support to him, since she was employed at the time he filed this motion. He also asked for attorneys' fees. In response to this motion, the court issued a bench opinion in which it granted to Kevin the exclusive use and occupancy of the marital home free from interference by the defendant or partition. The court directed Nancy to return the personal property items which she had removed from the home. The request for child support was denied. Aggrieved from the judgments entered below, Nancy appeals to this court seeking review and disposition favorable to her claims.

III.
Kevin Faries and Nancy Huyser wed on June 4, 1983. To this union two children were born, Amanda Katherine and Daniel Patterson, whose respective dates of birth are December 4, 1984, and May 29, 1987. After seven years of marriage, Kevin and Nancy sought legal dissolution of the bonds of matrimony.
At trial, Nancy's testimony revealed that she and Kevin lived together, as husband and wife, until February 21, 1990, when they separated. She recounted that on the Saturday before the Wednesday she left home, Kevin was very angry with her. According to Nancy, Kevin told her to either leave the home or be prepared to be a wife, who would do everything he said. During this same episode, he called her parents and told them that they were no longer welcome in his home because of something Nancy's mother did to him the previous Christmas.[5] Kevin stormed out of the house. Nancy testified that she was "scared to death" because Kevin was out of control. She was afraid of what his reaction would be when he got home and found her still there, so she decided to leave home.
On Sunday she placed a deposit on an apartment; Monday, she called an attorney. She elicited aid from her mother, who helped her move. She testified that she lived in constant fear her last days with Kevin. She stated that when she left, she took most of the children's things, especially their toys, furniture and clothing, because she intended for the children to live with her. Kevin found out about her plans for the children and prevented her from taking the children to the apartment.
Kevin told a different story. He stated that he told Nancy that she needed to awake, because he was about to go for a run. According to him, he attempted to awake her twice and she told him that she was awake. After returning from his run, he found that Daniel had strewn VCR tapes on the living room floor and Nancy was still in bed.
On the previous Friday, Amanda told Kevin that Nancy's mother was coming to visit them on Wednesday, February 21. When he inquired, Nancy told him that she did not know why her mother was coming to visit. Kevin admitted that he called Nancy's mother and told her that she was not welcome in the house. He stated that he did not do anything to cause Nancy to leave, but they did argue on the days prior to February 21.
Nancy sought to show that Kevin had a violent temper. Kevin admitted that on February 21, 1990, he asked Nancy to leave the home, though she did not leave until four or five days later. He admitted that he spanked his wife once when she hit Amanda. He also grabbed her arm on one *1208 occasion. He admitted that sometimes he called Nancy a "candy ass or bitch".
Nancy testified that she was mistreated emotionally; she felt that Kevin hated her and was disgusted by her presence. She was afraid of him; he disrespected her, treated her with contempt and tried to control everything she did. According to her, physical abuse began in January of 1989.
Sue Ann Meng, clinical social worker, had occasion to counsel Nancy. At the time of hearing, she had seen Nancy fourteen times. She initially started seeing Nancy for marital counseling, then she started advising her on an individual basis. She diagnosed Nancy as suffering from an "adjustment disorder with depressed moods." She opined that Nancy had problems with self-esteem and her (Nancy's) inability to maintain herself in coping skills was indicative of someone, who had been abused and misused emotionally by her husband. Meng testified that Nancy's condition would not prevent her from caring for the children. At the beginning of the counseling, Nancy told Meng that she was concerned for her safety. Meng had never met nor did she know Kevin on any other basis.
On cross-examination, Meng explained that Nancy has difficulty in dealing with day-to-day relationships with those close to her, such as her husband; she, however, could overcome these problems with enough counseling.
After hearing all of the evidence, the court denied the relief sought "because there was no corroboration as to their respective grounds as being the cause for the separation." The court found that none of the witnesses for either party testified to the cause of separation or grounds for divorce.

IV.
The standard of review applied to findings of a chancellor is a familiar one. This Court will not disturb those findings, unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Hill v. Southeastern Floor Covering Company, 566 So.2d 874, 877 (Miss. 1992) quoting Bell v. Parker, 563 So.2d 594, 597 (Miss. 1990).
Although Nancy presents several issues for review, we determine that only one has merit and we discuss only that and the custody issue. Nancy argues that the court erred in refusing to grant her a divorce on the grounds of habitual cruel and inhuman treatment. She claims that error resulted when the court applied an improper standard in making its determination of whether she was entitled to a divorce. In particular, the court erred in holding that she had to satisfy the "traditional proximate cause of separation rule." We agree.

V.
In Wilson v. Wilson, 547 So.2d 803 (Miss. 1989), the Court reiterated the level, quantum, and nature of proof one must prove before a divorce can be granted on the grounds of habitual cruel and inhuman treatment. There, it was held,
habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said to be a permanent condition.
* * * * * *
Since Marble[[6]] and Gallaspy[[7]] we have consistently insisted that parties seeking divorce on grounds of habitual cruel and inhuman treatment prove that the conduct of the offending spouse really was cruel and inhuman, and habitually so, taking the legislative language by its common and ordinary meaning. (citations omitted).
Id. at 805 (footnotes mine). Further elucidation of the issue presently before the *1209 Court comes from Fournet v. Fournet, 481 So.2d 326 (Miss. 1985), wherein it was held that a spouse seeking divorce on the ground of habitual cruel and inhuman treatment must offer proof as to causal connection between cruel treatment complained of and spouse's separation from household. Id. at 329. The proximate cause rule of Fournet was limited a year later in Bias v. Bias, 493 So.2d 342 (Miss. 1986). There the Court recognized that the conduct of one separated from her spouse may constitute habitual cruel and inhuman treatment.
Absence of proof of proximate cause does not in logic negate the reality of habitual cruel and inhuman treatment, which may indeed have been a proximate cause of harm to the health and physical well being of the plaintiff (as distinguished from the actual cause of the separation). The chancellor's primary inquiry must in justice be into the ground for divorce. That inquiry requires a dual focus: upon the conduct of the offending spouse and the impact of that conduct upon the plaintiff. If the requisite impact upon plaintiff is proved, there is little reason why we should arbitrarily dismiss because of the proximate cause of separation rule which no legislature has mandated.
Id. at 345.
Turning to the case at bar, the court erred in dismissing Nancy's complaint for divorce. Bias informs that the requisite impact Nancy needed to establish was that Kevin's actions towards her were the proximate cause of harm to her health and well-being. She clearly adduced sufficient evidence to support such a finding. Meng testified that Nancy's inability to maintain coping skills was indicative of someone who had been abused and misused emotionally by her husband. She attributed Nancy's poor mental health shown by her depressed moods and low self-esteem to spousal abuse. Nancy stated that prior to her leaving, Kevin verbally abused her; in fact Kevin admits that he called her candy ass and bitch on a couple of occasions. She claimed that he physically abused her, evidenced by a spanking, rough intercourse resulting in vaginal bleeding and biting her breasts with the purpose of inflicting pain.
This Court has held that impact of the conduct on the plaintiff is crucial, thus we employ a subjective standard. One who is sensitive and accustomed to an "environment of breeding, education, or culture" Parker v. Parker, 519 So.2d 1232, 1235 (Miss. 1988), might be severely affected and harmed by treatment considered minor by one hardened by harsh treatment and language. Id. In the instant case, the testimony by Nancy, corroborated by Meng's findings, unrefuted and in some instances corroborated by Kevin's statements, concerning Kevin's abuse is sufficient.
The chancellor appears to have reached his conclusion solely on the basis of an absence of evidence suggesting that cruelty proximately caused the separation. That court made no findings with regard to the other prerequisite elements. It is appropriate then that we reverse the judgment and remand this issue to the chancellor for a determination in light of Bias.

VI.
As her second contention, Nancy seeks a reversal of the trial court's order granting custody of the two minor children to Kevin. She argues that because of the ages of the children, the tender-years' doctrine should have been applied by the court and custody of the children granted to her. Kevin argues that faced with two parents who were fit to have custody the court appropriately applied the applicable standards and made a decision which finds support in the evidence.
Both parties correctly direct our attention to Pellegrin v. Pellegrin, 478 So.2d 306 (Miss. 1985). There, the Court held that the polestar consideration in matters of child custody is the best interest and welfare of the child. Id. at 307. In addition, other factors to be considered by the court are the health, and sex of the child; which parent has had the continuity of care prior to the separation; which has the best parenting skills, the willingness and capacity to provide primary child care; employment *1210 and its attendant responsibilities; physical and mental health and age of the parents; moral fitness of the parents; home, school and community record of the child; preference of child at age sufficient to express a preference; stability of home environment and employment of each parent and other factors relevant to the parent-child relationship. Id. at 308-09. Contrary to the argument espoused by Nancy, the age of the children is subordinate to the polestar consideration and is but one factor to be considered by the court in determining the best interest of the child. Id. at 307 quoting Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
Testimony in the case at bar established that both parents were suitable choices for custody. In fact neither could point to any material flaws in the other which would shed light on the other's unfitness. When Nancy was in class, Kevin cared for the children; likewise, when he worked, she was the primary care-taker; they shared the responsibilities of cooking and taking the children to day-care and school. Although Nancy carried the children to the Presbyterian Church until she left in February, Kevin, who was Catholic, assumed the religious responsibility upon her leaving and began taking the children to Mass. Nancy took exception to this but, without more, taking the children to Catholic service does not warrant a determination of unfitness. Thus, all things being equal, the court determined that it was best for the children to remain with Kevin. Critical to the court's determination was Nancy's action of secreting the children from August 7, 1990, to August 30, 1990. The judge determined that this conduct "did not exhibit the best interest of the children on her part." Additionally, the court ruled that the best welfare of the children would be served if Kevin were granted custody. Because Kevin had possession of the house, granting him custody would give the children stability of the home environment and place them in familiar surroundings in accordance with the Pellegrin factors. On the facts and evidence in the record, it cannot be said that the court manifestly erred in granting custody to Kevin. The chancellor's decision will not be disturbed.

VII.
For the foregoing reasons the judgment denying Nancy a divorce on grounds of cruel and inhuman treatment is reversed and that issue is remanded to the chancery court for further proceedings. In all other respects, the judgment of the chancery court is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] When Nancy left the marital home, she took the family car with her.
[2] The testimony revealed that on August 7, 1990, Nancy took the children to North Carolina. The court issued its opinion denying the divorce petitions on August 6; judgment in accordance with the opinion was entered on August 15. Nancy returned to Mississippi on August 30.
[3] Specifically, the court held that

Nancy Faries shall have the minor children visit with her every other weekend from Friday at 5:00 p.m. until the following Sunday at 6:00 p.m. commencing Friday, September 14, 1990. In addition, she shall have the children visit with her each and every week from 3:00 p.m. on Wednesday until 3:00 p.m. on Thursday and at such other times as the parties may agree.
[4] In effect, the court amended its earlier judgment of August 15, 1990, to provide custody and visitation of the minor children of the parties.
[5] Nancy and the children left home on Christmas Day of 1989 and went to visit Nancy's parents, who lived on the Gulf Coast. Kevin did not hear from them until December 31, 1989. Apparently, he thought this conduct inconsiderate and blamed Nancy's parents for her actions.
[6] Marble v. Marble, 457 So.2d 1342 (Miss. 1984).
[7] Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1985).