# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-00088-SCT

*NATHANIEL LEWIS TALBERT*

*v.*

*CHARLOTTE TALBERT*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/96 |
| TRIAL JUDGE: | HON. MELVIN McCLURE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | T.K. MOFFETT |
| ATTORNEY FOR APPELLEE: | MARY LEE WALKER BROWN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 07/29/99 |
| MOTION FOR REHEARING FILED: | 08/09/99; denied 09/30/99 |
| MANDATE ISSUED: | 10/07/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. We granted Lew Talbert's petition for writ of certiorari to review the Court of Appeals's judgment affirming the chancellor's granting of a divorce to his wife, Charlotte Talbert, on the grounds of habitual cruel and inhuman treatment, and the exclusion of certain letters which the Court of Appeals found to be harmless error. Mr. Talbert also asserts that the chancellor and the Court of Appeals improperly ruled that his counterclaim of adultery requires proof of causal connection to the separation of the parties.

¶2. We hold that the exclusion of the documents in question was reversible error and that the chancellor erred when he granted Mrs. Talbert a divorce for habitual cruel and inhuman treatment and refused Mr. Talbert's evidence of adultery. For these reasons, we reverse the judgment of the Court of Appeals, reverse the trial court's judgment, and remand this case to the DeSoto County Chancery Court for a new trial.

### STATEMENT OF THE FACTS

¶3. Charlotte and Lew Talbert were married on June 14, 1969, in Memphis, Tennessee. At that time he was 19, and she was 17. Two sons were born of the marriage, Wesley, born November 23, 1977, and Benjamin, born October 1, 1981. Mr. Talbert went to college and earned his Certificate in Public Accounting. Mrs. Talbert earned a high school degree and worked early in the marriage when Mr. Talbert was in school, but stayed home after the children were born. Mr. Talbert had several jobs before finally becoming comptroller at First Mortgage Strategy Group in June of 1987. On the side during tax season, Mr. Talbert prepared tax returns as a CPA. Together, Mr. and Mrs. Talbert operated a billing and bookkeeping service for two rural water systems known as Water Systems Management.

¶4. The marriage was a rocky one. Constant bickering and name-calling were common. Both Mr. and Mrs. Talbert sought out and received treatment both for marital problems and depression. During Mrs. Talbert's many sessions for depression, her psychologist recommended that she write down her thoughts as a form of therapy. Mrs. Talbert gave the letters to her husband to read. When Mr. Talbert was through reading them, he gave them back to Mrs. Talbert who burned them. Without her knowledge Mr. Talbert kept copies of some of the letters. The trial judge refused to admit the letters into evidence but allowed Mr. Talbert to testify regarding the letters.

¶5. Mr. Talbert worked at First Mortgage until May of 1993, when he was laid off. Mr. Talbert fell back on his private practice as a CPA, primarily preparing tax returns, and also doing the accounting for a plumbing company and a few other businesses. In March of 1994, Mrs. Talbert demanded that Mr. Talbert move out of their home. Mrs. Talbert petitioned for divorce on the grounds of habitual cruel and inhuman treatment on April 7, 1994. Mr. and Mrs. Talbert reunited sexually in late May of 1994. Mr. Talbert answered the complaint in June of 1994, but did not counterclaim for divorce. However, any chance for reconciliation ended when Mrs. Talbert began having a sexual relationship with another man. Mrs. Talbert amended her petition for divorce in August of 1994, to allege June 1, 1994, as the date she and Mr. Talbert finally separated. On December 7, 1994, Mr. Talbert filed a counterclaim for divorce on the grounds of adultery and habitual cruel and inhuman treatment or in the alternative irreconcilable differences.

¶6. After five days of trial the chancellor awarded a divorce to Mrs. Talbert on the grounds of habitual cruel and inhuman treatment, denying Mr. Talbert's claim for divorce on adultery. Mrs. Talbert was given custody of the two children and title to the family home. Mr. and Mrs. Talbert were each granted a one-half interest in the family home, but Mrs. Talbert was awarded lump sum alimony in the amount of $25,000, to be taken out of Mr. Talbert's interest in the home, giving full title to Mrs. Talbert. The chancellor's order required Mr. Talbert to pay child support based upon the guidelines of 20% of his adjusted gross income, pay Mrs. Talbert the sum of $1,200 for rehabilitative alimony, transfer a one-sixth interest in his 401(k) plan to Mrs. Talbert, and pay $5,000 of Mrs. Talbert's attorney's fees. It is from this decree that Mr. Talbert appealed.

¶7. In a split decision, the Court of Appeals affirmed the trial court's judgment awarding Mrs. Talbert a divorce on grounds of habitual cruel and inhuman treatment. The Court also found that the chancellor did not err in ruling that Mr. Talbert was not entitled to a divorce upon grounds of adultery, because Mrs. Talbert's adultery was not a proximate cause of the couple's separation. The Court further held that although the trial court erred in excluding Mrs. Talbert's letters, the error was harmless, because Mr. Talbert was allowed to testify regarding their contents. Judge Southwick dissented, asserting that Mrs. Talbert presented insufficient evidence to support her claim for divorce upon grounds of habitual cruel and inhuman treatment. The dissenters also found that the trial court committed reversible error in failing to

consider Mr. Talbert's complaint for divorce upon grounds of adultery.

## STATEMENT OF THE LAW

### I.

### ADEQUACY OF PROOF OF HABITUAL CRUEL AND INHUMAN TREATMENT

¶8. Although not raised by Mr. Talbert as an assignment of error in his petition, we agree with the position taken in the Court of Appeals's dissent that Mrs. Talbert's proof of habitual cruel and inhuman treatment was inadequate to support the chancellor's judgment. In ***Potts v. Potts***, 700 So. 2d 321 (Miss. 1997), we said:

We have previously held that:

Cruel and inhuman treatment, unaccompanied by personal violence is such conduct only as endangers life, limb, or health, or creates reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relation unsafe for the unoffending spouse or such unnatural or infamous conduct as would make the marital relation revolting to the unoffending spouse and render it impossible to discharge duties thereof.

*Sandifer v. Sandifer*, 215 Miss. 414, 61 So. 2d 144 (1952). We reiterated this standard in *Wilson v. Wilson*, 547 So. 2d 803 (Miss. 1989):

In years gone by, this Court has consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may be reasonably said a permanent condition.

*Id*. at 805 (Miss. 1989) (denying divorce on the ground of habitual cruel and inhuman treatment although husband and wife were found to genuinely despise each other), cited in *Brooks v. Brooks*, 652 So. 2d 1113, 1124 (Miss. 1995) (affirming chancery court's failure to find the ground of habitual cruel and inhuman treatment where husband's complaint boiled down to the fact that wife was not congenial).

This Court has required more than mere unkindness or rudeness, or incompatibility or want of affection to support a finding of cruel and inhuman treatment. *Churchill v. Churchill*, 467 So. 2d 948 (Miss. 1985) (holding that party had not shown cruel and inhuman treatment even though they had irreconcilable differences and probably would never be able to live together in harmony). See also *Steen v. Steen*, 641 So. 2d 1167 (Miss. 1994) (affirming denial of divorce on ground that husband was habitually cruel and inhumane where parties fought constantly over money, husband bullied and intimidated wife, and husband had pinched her on one occasion and dragged her against a door facing on another occasion over the course of a nine year marriage; chancery court had concluded that wife was merely dissatisfied with marriage); *Wires v. Wires*, 297 So. 2d 900, 902 (Miss. 1974). We have repeatedly counseled against finding the ground based on petty indignities, frivolous quarrels, general incompatibility or petulant tempers. *Howard v. Howard,* 243 Miss. 301, 303-04, 138 So. 2d 292 (1962); see also *Wilson v. Wilson*, 547 So. 2d 803 (reversing divorce

where sole ground pled, that spouse had been habitually cruel and inhumane, was not proven). And we have further noted that "[w]e recognize that courts have become liberal in the application of proof on the habitual cruel and inhuman treatment ground. However, by no means have they made a farce and mockery of the requirement to prove the ground." *Gallaspy v. Gallaspy*, 459 So. 2d 283 (Miss. 1984).

*Potts*, 700 So. 2d at 323.

¶9. We agree with the Court of Appeals's dissent that the facts in this case do not meet the standard for habitual cruel and inhuman treatment. The chancellor relied upon Mr. Talbert's raising his voice to Mrs. Talbert, belittling her, and a few acts of violence very early in the twenty-seven-year marriage. The record indicates that Mr. Talbert exhibited insensitive and somewhat boorish, obnoxious, and selfish behavior throughout the period of the marriage, but again, the fact that one spouse eventually grows weary of the other's established behavior pattern does not give rise to the requisite standard for habitual cruel and inhuman treatment. Furthermore, Mr. Talbert put on proof of Mrs. Talbert's mental instability, recurring unsubstantiated accusations of infidelity, ridicule of his lack of sexual prowess, blame of the separation on his lay off and the subsequent lack of income, and Mrs. Talbert's own temper and aggressive behavior. Mrs. Talbert reciprocated Mr. Talbert's conduct, as evidenced by the psychologist's testimony that both spouses exhibited "violent outbursts" and screamed at each other equally. The psychologist also stated that Mrs. Talbert was sometimes more aggressive than Mr. Talbert.

¶10. These facts do not show endangerment to "life, limb or health" or reasonable fear thereof, or such "unnatural and infamous" conduct as to make the marriage revolting. The fact that Mr. Talbert may be insensitive does not amount to proof of habitual cruel and inhuman treatment. Nor could the conduct complained of be reasonably labeled "systematic and continuous." The Talberts' unpleasant marriage may be beyond repair, but the trial court erred in granting Mrs. Talbert a divorce on grounds of habitual cruel and inhuman treatment without sufficient proof to support her claim. We reverse the trial court's judgment and the Court of Appeals's affirmance of this issue, and we render judgment in favor of Mr. Talbert on Mrs. Talbert's claim of habitual cruel and inhuman treatment.

## II.

## EXCLUSION OF MRS. TALBERT'S LETTERS

¶11. The first issue Mr. Talbert raises in his petition for writ of certiorari is whether the trial court erred in excluding Mrs. Talbert's letters written during the course of her therapy. The chancellor held that the letters were privileged psychotherapist-patient communications under Miss. R. Evid. 503(b)(B). The Court of Appeals found that the trial court erred in excluding the letters, because Mrs. Talbert waived the privilege when she called her psychologist, Dr. Little, to testify. However, the Court of Appeals found the error harmless, because Mr. Talbert was allowed to testify regarding the content of the letters at trial. He testified that Mrs. Talbert wrote about her three personalities or egos in the letters, that she admitted in the letters that she had pushed Mr. Talbert "beyond anger," and that the letters contained name-calling by Mrs. Talbert. The Court of Appeals found that exclusion of the letters was harmless error since Mr. Talbert was allowed to testify regarding the letters from his own memory and that the burden was on Mr. Talbert to point out any portions of the letters which he could not recall that would be relevant to his case.

¶12. We disagree with the Court of Appeals's conclusion that the exclusion of Mrs. Talbert's letters

amounts to harmless error. That conclusion assumes that Mr. Talbert's memory of 130 pages of letters was as reliable as the letters themselves. Furthermore, his testimony regarding the letters' contents was necessarily limited by the questions he was asked. The conclusion that Mr. Talbert's testimony was somehow equivalent to the introduction of the letters is therefore based on a false premise.

¶13. Mr. Talbert had two significant reasons in wanting to admit the letters-to defend Mrs. Talbert's claim of habitual cruel and inhuman treatment and to support his own allegation of adultery. The letters go directly to Mrs. Talbert's state of mind and her multiple personality disorder, supporting Mr. Talbert's assertion that she was equally or more aggressive on occasion. The letters also disclose her fantasies of adulterous relationships during the period of the marriage, which may prove her inclination to commit adultery. Mr. Talbert's testimony was an insufficient substitute for the letters, so he was prejudiced by their exclusion. The exclusion of the letters is therefore not harmless error and requires reversal in this case.

### III.

### WHETHER ADULTERY MUST BE CAUSALLY RELATED TO THE SEPARATION

¶14. The chancellor in this case, citing cases involving habitual cruel and inhuman treatment, denied Mr. Talbert's claim for divorce on the grounds of adultery because the actual adulterous act occurred after the separation of the parties. In authorizing a divorce on grounds of adultery, the Legislature has not required that the adultery cause a separation. *See* Miss. Code Ann. § 93-5-1 (1994). Indeed, "[i]t shall be no impediment to a divorce that the offended spouse did not leave the marital domicile or separate from the offending spouse on account of the conduct of the offending spouse." *Id*. § 93-5-4.

¶15. We have never explicitly stated that the adultery should be causally related to the final separation of the parties to be a valid basis for granting a divorce. In fact, in *McKee v. Flynt,* 630 So. 2d 44 (Miss. 1993), we said that the causal relationship is not necessarily required even in cases of cruel and inhuman treatment:

> There must exist some causal connection between the habitual cruel and inhuman treatment and the parties' separation. *Fournet v. Fournet*, 481 So. 2d 326, 329 (Miss. 1985). However, application of this rule was limited by *Bias v. Bias*, 493 So. 2d 342, 345 (Miss. 1986).
>
> Absence of proof of proximate cause does not in logic negate the reality of habitual cruel and inhuman treatment, which may indeed have been a proximate cause of harm to the health and physical well being of the plaintiff (as distinguished from the actual cause of the separation). **The chancellor's primary inquiry must in justice be into the ground for divorce. That inquiry requires a dual focus: upon the conduct of the offending spouse and the impact of that conduct upon the plaintiff. If the requisite impact upon plaintiff is proved, there is little reason why we should arbitrarily dismiss because of the proximate cause of separation rule which no legislature has mandated.**
>
> *Bias*, 493 So. 2d at 345. *See also Faries v. Faries*, 607 So. 2d 1204, 1209 (Miss. 1992). *Bias* further holds that acts occurring after the parties have separated may be considered in the charge of habitual cruel and inhuman treatment. *Bias,* 493 So. 2d at 345.

*McKee,* 630 So. 2d at 48 (emphasis added).

¶16. We find it judicially unsound to apply law governing divorce upon grounds of habitual cruel and

inhuman treatment to an issue of adultery, because of the nature of these very different grounds for divorce. A single act of cruelty is usually insufficient to sustain a divorce, while a single act of uncondoned adultery is sufficient. However, even the case law applicable to divorce upon grounds of habitual cruel and inhuman treatment indicates that the offending conduct need not be causally related to the separation. Nothing in our jurisprudence requires that a ground for divorce, such as adultery, arise before separation. As stated in the Court of Appeals's dissent, Mr. Talbert did not seek a divorce until he became aware of Mrs. Talbert's adultery. As a result, even if we were to adopt a rule requiring a causal connection between the adultery and the separation, that requirement would be satisfied in this case. The trial court erred in rejecting Mr. Talbert's evidence of Mrs. Talbert's adultery. The chancellor should have considered all valid grounds for divorce raised by the parties in this case.

## CONCLUSION

¶17. A review of the record in this case reveals that the proof of habitual cruel and inhuman treatment was inadequate to sustain an award of divorce on those grounds to Mrs. Talbert. The chancellor committed manifest error in excluding the letters written during the course of Mrs. Talbert's therapy, and, contrary to the Court of Appeals's opinion, that error was not harmless. Finally, the chancellor improperly concluded that an award of divorce on the grounds of adultery must be causally related to the separation of the parties, and the Court of Appeals failed to properly address the issue. As a result of these errors, we reverse the judgment of the Court of Appeals and reverse the trial court's award of divorce to Mrs. Talbert upon grounds of habitual cruel and inhuman treatment and render judgment in favor of Mr. Talbert on that issue. We also reverse the judgment of the trial court and the judgment of the Court of Appeals on Mr. Talbert's claim of adultery and remand this case to the DeSoto County Chancery Court for a new trial on those grounds.

¶18. **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR. PRATHER, C.J., CONCURS IN RESULT ONLY. WALLER, J., NOT PARTICIPATING.**