## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CA-00757-SCT

*JONATHAN BLAKE ZEMAN*

*v.*

*CARL AND JEAN STANFORD*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2000 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | H. R. GARNER |
| ATTORNEY FOR APPELLEE: | RONALD L. TAYLOR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 05/10/2001 |
| MOTION FOR REHEARING FILED: | 5/29/2001; denied 7/19/2001 |
| MANDATE ISSUED: | 7/26/2001 |

### BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.

### PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. Jonathan Blake Zeman ("Jonathan") and Lesa Stanford Zeman ("Lesa") were divorced by decree dated May 3, 1999. Sole custody of the two children born of their marriage, Jonathan Blake Zeman, II ("Blake"), age 7, and Lesa Brooke Zeman ("Brooke"), age 10, was granted to Jonathan. Lesa was granted regular visitation, but such visitation was restricted after Lesa was subsequently incarcerated in Arkansas.

¶2. Carl and Jean Stanford are the maternal grandparents of Blake and Brooke. The Stanfords filed a Petition for Grandparents' Visitation Rights on November 29, 1999, in the Chancery Court of DeSoto County, Mississippi. Jonathan filed a motion to be awarded attorney's fees under Miss. Code Ann. § 93-16-3(4) (1994) on January 12, 2000. Jonathan then filed his Answer and Defenses and Counter-Petition, alleging that Miss. Code Ann. § 93-16-3(1) (1994) was unconstitutional, that the Stanfords had no standing to bring the action, and that such visitation disrupted the family life of the children. The Stanfords filed their Answer to Counter-Petition on February 8, 2000, denying lack of standing or that their visitation with the children was disruptive.

¶3. The cause was tried before Chancellor Percy L. Lynchard, Jr., on April 4, 2000. The Chancellor held that the Stanfords were entitled to visitation and that such visitation would be in the best interests of the children, if such visitation was granted based on the parameters set forth in ***Martin v. Coop***, 693 So.2d 912 (Miss. 1997). On April 18, 2000, the Chancellor entered an order granting the Stanfords visitation rights. Jonathan then filed his Motion for Reconsideration and/or New Trial. The Chancellor entered an Order denying Jonathan's motion, and this appeal was timely filed.

### FACTS

¶4. Carl and Jean Stanford have had a relationship with Blake and Brooke since the children's birth. The

children had routinely eaten Sunday dinners, spent Christmases, and celebrated their cousins' birthdays at the Stanford home prior to the divorce. The curtailment of such activities was a factor in prompting the Stanfords to file their petition seeking visitation rights. Jean Stanford, a schoolteacher at Sacred Heart school, taught Brooke when Brooke was in the second grade. After the divorce, Lesa would bring the children to the Stanfords' home since she was living with the Stanfords at that time. After Lesa was incarcerated in Arkansas on three counts of attempted capital murder and related charges, her visitation with the children was restricted considerably.

¶5. Thereafter, the Stanfords continued to visit with the children regularly. Jonathan permitted visitation usually one weekend per month, which included overnight visitation. In the fall of 1999, the Stanfords' relationship with Jonathan began to deteriorate. The Stanfords were not denied visitation, but they testified that attempting to visit the children became a "constant hassle," and that Jonathan failed to return their phone calls and attempted to "dictate" the terms of the visitation.

¶6. Jonathan became upset when he learned that the children had been communicating with their mother by letter and by telephone while at the Stanfords' home. There is conflicting testimony regarding this issue. In his brief before this Court, Jonathan claims that he asked the Stanfords to discontinue allowing any letters or phone calls between the children and their mother, but that they refused. Jonathan states that he told Jean that all letters, mail, and phone calls to and from the children should come through him, since he felt some of the calls and letters were very disruptive to the children. Jonathan testified that he told the Stanfords he did not want letters from Lesa to be given to the children until he first had a chance to read them.

¶7. The Stanfords, however, testified that before allowing the children to speak to their mother by telephone and write letters to her, they first obtained permission from Jonathan. Jean Stanford testified that Jonathan never told her not to allow the children to write or communicate by telephone with their mother, and that if he had, she would have complied.

¶8. Jonathan's testimony at trial acknowledged that the Stanfords complied with his wishes and that his displeasure stemmed from the fact that letters from Lesa began "flowing" through the children's maternal aunt. He testified that "we had talked about that and about stopping [passing letters to the children at school] and that stopped, and then [letters] started flowing through [the maternal aunt] bringing them." Further, the record reflects the following exchange:

Q. Okay. And after Mrs. Stanford was advised by you of [the letters upsetting the children], did she stop it?

A. It stopped some time after that, but then they - - like I said, then they started coming through the daughter....

¶9. In early December of 1999, Jonathan married his present wife, Regina. Regina and her three children from a prior marriage moved in with Jonathan and his two children. Soon after, Jonathan permitted Blake and Brooke to visit with the Stanfords during the day on Christmas Eve, December 24, 1999. The children normally spent Christmas Eve night with their grandparents and great-grandparents, and Jean became very upset when Jonathan picked the children up later in the afternoon that day. Jonathan testified that the holiday situation was different now since he had remarried and had other family members to visit.

¶10. The Stanfords filed a Petition for Grandparents' Visitation Rights on November 29, 1999. They

testified that they did not wish to interfere with the way Jonathan rears his children, but that they wish to maintain a normal relationship with the children. After being served with the summons and petition on January 6, 2000, Jonathan stopped all visitation until the cause came for trial on April 4, 2000. In his counter petition, Jonathan requested that the Stanfords be enjoined from visiting, coming about or around him or his children unless specifically invited by him and under the circumstances and conditions of visitation with the grandchildren as dictated by him and him alone. Jonathan then filed a motion for attorney's fees pursuant to Miss. Code Ann. § 93-16-3(4) (1994).

¶11. On April 18, the trial court entered an Order Granting Granparents' Visitation Rights based on the fact that a viable relationship had been established between the Stanfords and the children and that it would be in the best interest of the children to allow the Stanfords visitation rights. After his Motion for Reconsideration And/Or New Trial was denied, Jonathan filed the present appeal, raising the following issues:

> **I. WHETHER THE CHANCELLOR ERRED IN HIS INTERPRETATION OF MISS. CODE ANN. § 93-16-3(1), BY ALLOWING GRANDPARENTAL VISITATION RIGHTS EVEN THOUGH VISITATION HAD NOT BEEN UNREASONABLY WITHHELD, AND WHETHER SAID CODE SECTION IS UNCONSTITUTIONAL IF IT ALLOWS FOR SUCH RIGHTS.**

> **II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING THE EXTENT OF UNRESTRAINED VISITATION TO THE GRANDPARENTS.**

> **III. WHETHER THE TRIAL COURT ERRED IN FAILING TO AWARD ATTORNEY'S FEES PURSUANT TO MISS. CODE ANN. § 93-16-3(4).**

## DISCUSSION

¶12. A limited standard of review is employed by this Court in reviewing decisions of a chancellor. ***Reddell v. Reddell***, 696 So.2d 287, 288 (Miss.1997) (citing ***Carrow v. Carrow***, 642 So.2d 901, 904 (Miss.1994)). The findings of a chancellor will not be disturbed on review unless the chancellor abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous. ***Bank of Miss. v. Hollingsworth***, 609 So.2d 422, 424 (Miss.1992) (citing ***Smith v. Dorsey***, 599 So.2d 529 (Miss.1992); ***Bowers Window & Door Co. v. Dearman***, 549 So.2d 1309 (Miss.1989)). For questions of law, the standard of review is de novo. ***Consolidated Pipe & Supply Co. v. Colter,*** 735 So.2d 958, 961 (Miss.1999) (citing ***Harrison County v. City of Gulfport***, 557 So.2d 780, 784 (Miss.1990)).

### I.

### A. The applicability of § 93-16-3(1).

¶13. The Mississippi Legislature enacted the Grandparents' Visitation Rights Statutes, Miss. Code Ann. § § 93-16-1 to -7(1994), to facilitate visitation rights to grandparents in certain circumstances. At issue is whether the chancellor should have applied § 93-16-3(1) or (2). The statute provides in pertinent part:

> (1) Whenever a court of this state enters a decree or order **awarding custody of a minor child to one (1) of the parents of the child** or terminating the parental rights of one (1) of the parents of a minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child's

parents who was not awarded custody or whose parental rights have been terminated or who has died may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with such child.

(2) Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court may grant visitation rights to the grandparent, provided the court finds:

(a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and

(b) That visitation rights of the grandparent with the child would be in the best interests of the child.

Miss. Code Ann. § 93-16-3 (1994) (emphasis added).

¶14. Jonathan argues that subsection (1) does not apply because Lesa Zeman, the natural mother, is not dead nor have her parental rights been terminated. This assertion is incorrect. The plain language of the statute clearly provides that "when an order is entered awarding custody of a minor child to one of the parents...either parent of the child's parents who was not awarded custody...may petition the court in which the decree or order was rendered...and seek visitation rights with such child." It is undisputed that Jonathan was awarded sole custody of the children. The Chancellor was therefore correct in holding that § 93-16-3(1) was the proper basis for the Stanfords' petition for grandparent visitation.

¶15. Jonathan argues that because the conditions of subsection (2) were not met, the court erred in awarding visitation to the Stanfords. Because the Chancellor correctly held that subsection (1) applied, subsection (2) need not be considered.

### B. The constitutionality of § 93-16-3(1).

¶16. Jonathan further challenges the constitutionality of § 93-16-3(1), arguing that the statute granted the Chancellor the unrestrained authority to invade the privacy of the Zeman family. In ruling that § 93-16-3(1) passed constitutional muster, the Chancellor correctly noted that this Court has previously addressed the identical issue. In *Martin v. Coop*, 693 So. 2d 912 (Miss. 1997), the paternal grandparents sought visitation with their grandchild under § 93-16-3(1) following the death of the child's father. This Court held:

The Fifth and Fourteenth Amendments to the United States Constitution proscribe governmental interference with individual liberties such as a parent's right to determine his child's care, custody and management. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982). However, this right is not absolute. *See Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (parental decisions may be curtailed by the State as in the best interest of the child). The Mississippi Legislature has determined that a grandparent may petition the court for visitation if a parent has died. This statute does not deprive the parents of their right to raise their children by determining the care, custody and management of the child. Mississippi's grandparent visitation act does not intrude upon this parental liberty, and as such, it is constitutional.

693 So. 2d at 915.

¶17. Jonathan attempts to rely on ***Troxel v. Granville***, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed. 2d 49 (2000), where the United States Supreme Court refused to uphold a Washington statute providing that any person may petition the court for visitation at any time and that a court may order visitation rights for any person when visitation may serve the best interests of the child. The Supreme Court held that said statute violated the fourteenth amendment substantive due process rights of the mother, as applied to permit paternal grandparents, following the death of children's father, to obtain increased court-ordered visitation, in excess of what the mother had thought appropriate. The plurality opinion described the statute as "breathtakingly broad," ***id.*** at 67, 120 S.Ct. at 2061, and stated that although the state supreme court had the opportunity to give the statute a narrower reading, it declined to do so. ***Id.*** at 2056.

¶18. The statute in ***Troxel*** swept too broadly by permitting any person to petition at any time with the only requirement being that the court find that visitation serves the best interest of the child. In contrast, this Court, via ***Martin***, specifically requires the Chancellor to consider certain factors before awarding visitation in order to ensure that parents are not deprived of their right to rear their children and determine their children's care, custody, and management. ***Martin***, 693 So.2d at 915. The limitations imposed by this Court in its interpretation of § 93-16-3 clearly result in the "narrower reading" that was lacking in ***Troxel***. The factors set forth in ***Martin*** specifically prohibit a Chancellor from ordering visitation which would interfere with a parent's right to rear his or her children.

¶19. Mindful of the requirements of ***Martin***, the Chancellor in the case sub judice carefully considered each factor in light of the evidence presented at trial before entering his order setting visitation between the Stanfords and their grandchildren. Accordingly, Jonathan's argument regarding the constitutionality of § 93-16-3(1) is without merit.

## II.

¶20. Jonathan's second argument is that the Chancellor erred in awarding excessive visitation to the Stanfords. In ***Martin***, this Court emphasized that the best interest of the child must always remain the polestar consideration. 693 So.2d at 915. This Court also set forth ten factors to be considered by a chancellor in determining grandparent visitation:

> 1. The amount of disruption that extensive visitation will have on the child's life. This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.
>
> 2. The suitability of the grandparents' home with respect to the amount of supervision received by the child.
>
> 3. The age of the child.
>
> 4. The age, and physical and mental health of the grandparents.
>
> 5. The emotional ties between the grandparents and the grandchild.
>
> 6. The moral fitness of the grandparents.
>
> 7. The distance of the grandparents' home from the child's home.

8. Any undermining of the parent's general discipline of the child.

9. Employment of the grandparents and the responsibilities associated with that employment.

10. The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not to be interfered with by the grandparents.

*Id.* at 916.

¶21. In the case sub judice, the Chancellor specifically found that it was in the best interests of the children to allow visitation with the Stanfords, stating:

The Court finds that based on the relationship which the maternal grandparents had with the children during the period of time in which they were allowed to visit or during the period of time in which their own child was married to the defendant, that a very viable relationship was established, and accordingly, it would be in the children's best interest to allow or to require that visitation be mandated between grandparent and grandchildren.

The Chancellor then carefully made findings on each of the ten factors set forth in *Martin* in deciding the extent of visitation that should be allowed.

¶22. Jonathan argues that the Chancellor ignored certain evidence in awarding visitation. In support of this argument, he repeatedly cites record testimony that the Chancellor "failed to be mindful of," or "failed to take into consideration."

¶23. While the Chancellor may not have specifically mentioned certain testimony or evidence when making his findings on the *Martin* factors, this Court will not disturb those findings unless (1) his findings are not supported by substantial credible evidence, (2) he has either committed manifest error, or (3) he applied an erroneous legal standard. *Bredemeier v. Jackson*, 689 So.2d 770, 775 (Miss.1997). As there is substantial evidence undergirding the Chancellor's findings, we uphold his determination regarding grandparent visitation.

¶24. Jonathan further argues that the Chancellor abused his discretion by granting the Stanfords "more and extensive visitation with no restrictions whatsoever" than he had previously awarded the non-custodial mother.

¶25. The Chancellor awarded the Stanfords one weekend per month, alternating holidays, and one week in the summer with the children. In *Martin*, the Court held that visitation granted to grandparents should be less than that which would be awarded to a non-custodial parent, unless the circumstances overwhelmingly dictate that such visitation is in the best interest of the child, and it would be harmful to the child not to grant it. *Martin*, 693 So.2d at 915. Before her incarceration, Lesa Zeman was granted visitation with the children two weekends a month, on alternating holidays, four weeks in the summer, and any other such reasonable visitation as could be mutually agreed upon by the parties. After her incarceration, Lesa's visitation with the children was suspended until further order of the court. At the time of the trial, Lesa was still incarcerated in Arkansas.

¶26. In *Settle v. Galloway*, 682 So.2d 1032 (Miss. 1996), this Court awarded grandparents more visitation with their grandchild than the natural father had with the child. *Settle* was decided one year before

*Martin*. Both cases, however, recognize that natural grandparents do not have a right to visit their grandchildren that is as comprehensive to the rights of a parent. *Settle* held that grandparent visitation consisting of every other weekend and on Easter and Thanksgiving days on alternating years was not excessive due to the fact that the father was serving overseas in the military and was therefore unable to exercise his parental visitation rights. *Settle*, 682 So.2d at 1035. The case at bar is analogous as Lesa Zeman is unable to exercise her previously awarded visitation rights due to her incarceration. Significantly, the visitation awarded to the Stanfords was less than the amount initially granted to Lesa Zeman before her incarceration.

¶27. Considering these factors, we hold that the Chancellor did not abuse the wide range of discretion he is afforded on matters of visitation.

## III.

¶28. Jonathan also contends that the trial court erred in refusing to award him attorney's fees pursuant to Miss. Code Ann. § 93-16-3(4). The statute provides that:

> Any petition for visitation rights under subsection (2) of this section shall be filed in the county where an order of custody as to such child has previously been entered. If no such custody order has been entered, then the grandparents' petition shall be filed in the county where the child resides or may be found. The court shall on motion of the parent or parents direct the grandparents to pay reasonable attorney's fees to the parent or parents in advance and prior to any hearing, **except in cases in which the court finds that no financial hardship will be imposed upon the parents**. The court **may** also direct the grandparents to pay reasonable attorney's fees to the parent or parents of the child and court costs regardless of the outcome of the petition.

Miss Code Ann. § 93-16-3(4) (1994) (emphasis added). Finding that no order had been entered prior to the trial directing the payment of attorney's fees, the Chancellor stated that he assumed the matter had been taken under advisement. The Chancellor then held that under the statute and the general law regarding attorney's fees in Mississippi, awards of attorneys fees in cases of a domestic nature are discretionary with the court. The Chancellor noted that Jonathan is gainfully employed, earning a gross pay of $5,329 per month and living in a home worth in excess of $100,000. The Chancellor denied Jonathan relief based on this information, stating that he had not demonstrated an inability to pay. The Chancellor determined that each party would be responsible to pay that party's own attorney and that court costs would be equally borne by both parties.

¶29. Jonathan argues that evidence adduced at trial reveals that the lawsuit had imposed a financial hardship upon him. He points to the fact that he was supporting a pregnant wife, with five children living in the home, that he was working two jobs to make ends meet, and that he was receiving no financial assistance from the natural mother. Jonathan argues that the Stanfords were financially secure and perhaps in a better position to bear the brunt of attorney's fees; however, he also points to the fact that the Stanfords were receiving financial assistance from Lesa Zeman's fiancé in order to retain their attorney.

¶30. An award of attorney's fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court. *Poole v. Poole*, 701 So.2d 813, 818 (Miss. 1997); *Arthur v. Arthur*, 691 So.2d 997, 1004 (Miss.1997). Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal. *Bredemeier,* 689 So.2d at 778. Absent an abuse of discretion, the chancellor's

decision in such matters will generally be upheld. *Armstrong v. Armstrong*, 618 So.2d 1278, 1282 (Miss. 1993); *Martin v. Martin*, 566 So.2d 704, 707 (Miss.1990); *Kergosien v. Kergosien*, 471 So.2d 1206, 1212 (Miss.1985). We hold that the Chancellor's decision was within the range of discretion permitted by the evidence and the applicable law.

## CONCLUSION

¶31. Based on the foregoing analysis, we hold that the Chancellor did not err in awarding the Stanfords grandparental visitation. Therefore, the judgment of the DeSoto County Chancery Court is affirmed.

¶32. **AFFIRMED.**

**BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**