*851
 
 GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. Merlene Anderson appeals the judgment granting Donald Anderson a divorce based on the ground of habitual cruel and inhuman treatment. Merlene argues that the chancellor erred by granting the divorce on the ground of habitual cruel and inhuman treatment because the ground of habitual cruel and inhuman treatment was barred by the doctrine of condonation. Finding reversible error, we reverse and render the judgment of the chancery court.
 

 FACTS
 

 ¶ 2. Donald and Merlene were married on October 2, 1994. Donald had two children from a previous marriage. At the time of the trial, Samuel was twenty-one years old, and Joshua was sixteen years old. Merlene had one child from a previous relationship, named Bart. Merlene adopted Joshua and Samuel after their marriage. Donald did not adopt Bart. They had no other children.
 

 ¶ 3. Donald was the pastor of Little Zion Missionary Baptist Church in Corinth, Mississippi, for seventeen years. He was also the president of the Northeast Mississippi Baptist State Convention. Merlene worked for the United States Army Reserve in Tupelo, Mississippi, for thirteen years.
 

 ¶ 4. On January 31, 2006, Donald filed a for divorce. In the complaint, Donald alleged as the grounds for divorce of habitual cruel an inhuman treatment and, alternatively, irreconcilable differences.
 

 ¶ 5. On February, 2, 2006, an emergency order was entered into, in which the chancellor ordered Merlene and Donald to live separate and apart in the marital residence.
 

 ¶ 6. At the conclusion of the trial, the chancellor found that Donald had proven that he was entitled to a divorce on the ground of habitual cruel and inhuman treatment. The chancellor relied on the evidence of Merlene’s persistent false accusations of infidelity, her ongoing emotionally abusive behavior toward the children, and “her ongoing activities which were oppressive to Donald, and made the relationship unbearable.” The chancellor granted the divorce, gave Donald legal and physical custody of Joshua, and awarded child support to Donald in the amount of $297 per month. Each party was ordered to pay their own attorney’s fees.
 

 STANDARD OF REVIEW
 

 ¶ 7. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.”
 
 Samples v. Davis,
 
 904 So.2d 1061, 1063-64 (¶ 9) (Miss.2004) (citing
 
 Jundoosing v. Jundoosing,
 
 826 So.2d 85, 88 (¶ 10) (Miss.2002)). We “will not disturb the chancellor’s opinion when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 at 1064 (¶ 9) (quoting
 
 Holloman v. Holloman,
 
 691 So.2d 897, 898 (Miss.1996)). However, questions of law are reviewed de novo.
 
 Amiker v. Drugs for Less, Inc.,
 
 796 So.2d 942, 945 (¶ 7) (Miss.2000). “The chancellor’s determination of whether a spouse’s conduct rose to the level of cruel and [inhuman] treatment is a determination of law.”
 
 Kumar v. Kumar,
 
 976 So.2d 957, 960 (¶ 13) (Miss.Ct.App.2008) (citations omitted).
 

 ANALYSIS
 

 ¶ 8. The issue is whether Donald proved he was entitled to a divorce on the ground of habitual cruel and inhuman treatment. Merlene argues that Donald failed to introduce sufficient evidence.
 

 
 *852
 
 ¶ 9. Mississippi Code Annotated section 93-5-1 (Rev.2004) provides that a divorce may be granted to the injured party based on the ground of habitual cruel and inhuman treatment. Such ground for divorce is established by evidence that the conduct of the spouse either:
 

 (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
 

 Kumar,
 
 976 So.2d at 961 (¶ 15) (internal quotations and citations omitted).
 

 ¶ 10. The supreme court has held that more is required “than mere unkindness, rudeness, or incompatibility to support the granting of a divorce on the ground of ‘cruel and inhuman treatment.’ ”
 
 Robison v. Robison,
 
 722 So.2d 601, 603 (¶ 5) (Miss.1998) (internal quotations omitted). “There must be corroboration of the complaining party’s testimony” for a divorce based upon habitual cruel and inhuman treatment.
 
 Chapel v. Chapel,
 
 700 So.2d 593, 597 (¶ 19) (Miss.1997).
 

 ¶ 11. Donald’s evidence was that Mer-lene abused him, physically and emotionally abused his children, verbally threatened him, attempted to ruin his reputation at his church, falsely accused him of having affairs, and exhibited “dominant behavior.” The breaking point for Donald was when Merlene locked him and herself in their bathroom for a couple of hours in January 2006. He called a friend, Officer John Hall, to come over and talk Merlene into letting Donald out of the bathroom. Mer-lene testified that she locked Donald in the bathroom with her because she wanted to talk to him, and he kept avoiding her. She felt that locking him in a room with her was the only way to make him talk to her about their marriage.
 

 ¶ 12. Donald also claimed that Merlene was physically and emotionally abusive to him. He claimed that she yelled at him for no reason. He testified that she threatened him by reminding him multiple times about a minister’s wife in Selmer, Tennessee, who had killed her husband. She also told him that God was upset with him for wanting to divorce her. In July 2006, a snake was in their home, and Mer-lene told Donald that the snake represented the devil and that it was God’s way of telling Donald that he did not agree with Donald’s filing for divorce. That same summer, Donald’s air conditioning unit went out in his side of the marital house. Again, Merlene told him that it was God’s way of telling him not to divorce her.
 

 ¶ 13. Samuel and Joshua testified that they saw Merlene hit their father a few times, but neither son named a specific instance or date. They also testified that Merlene yelled at Donald for no reason. Officer Hall testified that he saw Merlene slam the bathroom door on Donald’s back.
 

 ¶ 14. Samuel and Joshua also testified that Merlene was physically and mentally abusive to both of them several years prior to Donald’s filing for divorce. The sons admitted that they did not tell Donald about the abuse until the night before trial began. Both claimed that she hit them and that she favored Joshua over Samuel. Merlene admitted that she was hard on Samuel during his teenage years. Joshua testified that during a fight between Mer-lene and Donald, Donald left the house in his car, and Merlene followed after him in her car. While she was backing up in her car, she almost hit Joshua.
 

 
 *853
 
 ¶ 15. The chancellor appointed a guardian ad litem. The guardian ad litem did not conclude that there was sufficient evidence to support a finding, after thorough examination, of any instance of physical abuse of the children. The chancellor agreed. Without such a finding, this evidence cannot be used by Donald to prove his ground for divorce.
 

 ¶ 16. Donald accused Merlene of attempting to “bring his church down.” According to Donald, Merlene discussed with members and with the head of the National Baptist Convention details of their marriage and Donald’s alleged adultery. Mer-lene stood up during one church meeting and said the only person that really loved her was Joshua. Merlene’s behavior embarrassed Donald.
 

 ¶ 17. Out of three fellow church members who testified, not one member corroborated Donald’s allegation of Merlene “ranting and raving” at conventions and church meetings about their marital problems and Donald’s alleged extra-marital affairs. Based on the testimony, it was not Merlene who “ranted and raved” about their marriage at a convention. Instead, it was a third person who had told the convention that Donald was treating Merlene badly.
 

 ¶ 18. Merlene admitted that she had asked for other church members’ prayers in some church meetings. She also told members that she did not want a divorce after Donald told the church that he had filed for divorce and members questioned her about it. She claimed that she called the head of the National Baptist Convention in an effort to save her marriage. She hoped that he would talk Donald out of going through with the divorce.
 

 ¶ 19. Donald claimed that Merlene attempted to “dominate” him and that “no real man [is] going to be dominated by his wife.” His example of Merlene being dominant was that she refused to allow the boys to have a dog. She testified that she did not like animals and that was her reason for not wanting a dog.
 

 ¶ 20. Donald testified that Merlene publicly had accused him of having affairs and that she had harassed the ladies that he counseled at church because she believed that he was having affairs with them. He claimed that one lady had to change her phone number because Mer-lene called and harassed her.
 

 ¶ 21. The chancellor’s decision was primarily based on the finding that Merlene’s accusations of infidelity were unfounded, Merlene’s ongoing abusive behavior toward the children, and Merlene’s “ongoing activities which were oppressive to Donald, and made the relationship unbearable.”
 

 ¶ 22. “[F]alse accusations of infidelity, made habitually over a long period of time without reasonable cause also constitute cruel and inhuman treatment.”
 
 Richard v. Richard,
 
 711 So.2d 884, 889 (¶ 18) (Miss.1998). However, “honestly made claims, even when later found to have been erroneous, do not constitute habitual cruel and inhuman treatment.”
 
 Gregory v. Gregory,
 
 881 So.2d 840, 845 (¶ 20) (Miss.Ct.App.2003). This brings us to consider the evidence of Donald’s alleged infidelities.
 

 ¶ 23. Donald traveled to conferences throughout the year. Merlene found out that in August 2006, Donald traveled to New Orleans, Louisiana, for a meeting and booked a hotel room for two. At trial, Donald testified that his friend was supposed to go with him to New Orleans but backed out. He denied that a woman stayed with him in the hotel room. Donald testified that he regularly booked a room for two in case someone at the conference or meeting needed a place to stay, and he did so despite the price increase
 
 *854
 
 when a room is booked for two people versus one person.
 

 ¶ 24. Merlene also found an e-mail that Donald had sent to a female assistant. The e-mail was very short and explicit; it said, “good pu* *y.” Donald admitted that he had sent the e-mail to his assistant, but he claimed that it was taken out of context because it was the punch line of a joke that they had both heard while at a meeting. He sent the e-mail in an effort to cheer her up. The full context or the joke was not in the record.
 

 ¶ 25. Donald also admitted that he visited dating web sites and looked at pornography. Merlene testified that she found the e-mails on his computer from women who Donald had met through dating web sites. Donald stated that he did not visit the web sites and look at pornography for his pleasure, but he did those things as research for counseling members of his congregation.
 

 ¶ 26. The chancellor’s finding that Mer-lene’s accusations of infidelity were unfounded is simply not supported by the record. Indeed, there was more than sufficient evidence to give Merlene reason to believe that Donald was in an adulterous relationship.
 

 ¶ 27. In
 
 Talbert v. Talbert,
 
 759 So.2d 1105, 1109 (¶ 9) (Miss.1999), the supreme court held that the husband’s “insensitive and somewhat boorish, obnoxious, and selfish behavior throughout the period of the marriage” did not prove the ground of habitual cruel and inhuman treatment. Even though the marriage was “beyond repair, [... ] the trial court erred in granting Mrs. Talbert a divorce on ground[ ] of habitual cruel and inhuman treatment without sufficient proof to support her claim.”
 
 Id.
 
 at (¶ 10).
 

 ¶ 28. Merlene’s behavior may have been odd at times and embarrassing to Donald, but her conduct did not meet the standard set forth to prove the ground of cruel and inhuman treatment. The yelling, the accusations of infidelity, and the “dominant behavior” exhibited by Merlene are more akin to mere unkindness, rudeness, or incompatibility.
 

 ¶ 29. More importantly, Donald failed to show that Merlene’s conduct had a negative impact on him. Our analysis must include the effect that Merlene’s conduct had on Donald. The “impact of the conduct on the plaintiff is crucial[;] thus[,] we employ a subjective standard.”
 
 Faries v. Faries,
 
 607 So.2d 1204, 1209 (Miss.1992). In
 
 Kergosien v. Kergosien,
 
 471 So.2d 1206 (Miss.1985), a wife’s financial irresponsibility and abandonment of family duties, even when considered in light of occasional “acts of cruelty” directed at the children, did not justify the granting of a divorce upon the ground of habitual cruel and inhuman treatment. There, the supreme court concluded:
 

 there is no proof that Mrs. Kergosien’s mismanagement of family funds, disappearances, or alleged mistreatment of the children rendered continuance of cohabitation impossible, except at the risk of life, limb, or health on the part of Mr. Kergosien. Nowhere in the testimony is there anything indicating that the appel-lee’s health was even slightly impaired[J
 

 Id.
 
 at 1210.
 

 ¶ 30. Like
 
 Kergosien,
 
 there is no testimony or other evidence to indicate that Donald’s health was even slightly impaired.
 
 Id.
 
 Donald has no physical or mental health problems due to Merlene’s conduct. There was no proof that Merlene’s accusations, taunting, yelling, and alleged mistreatment of the children rendered cohabitation impossible, except at the risk of life, limb, or health on the part of Donald.
 

 
 *855
 
 ¶ 31. In
 
 Massingill v. Massingill,
 
 594 So.2d 1173, 1178 (Miss.1992) (quoting
 
 Kergosien,
 
 471 So.2d at 1210), the supreme court held that:
 

 Divorce is a creature of statute; it is not a gift to be bestowed by the chancellor based upon a perception that declining to grant the divorce will not restore the couple to a harmonious relationship. It is a statutory act and the statutes must be strictly followed as they are in derogation of the common law.
 

 While we agree that the parties’ marriage is, indeed, troubled and possibly irreparable, we find that Donald presented insufficient evidence to prove the ground of habitual cruel and inhuman treatment. Accordingly, the chancellor’s judgment is reversed and rendered.
 

 ¶ 32. THE JUDGMENT OF THE AL-CORN COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. CARLTON, J., NOT PARTICIPATING.